J. P. McCLALLAHAN ET AL. v. J. W. MARSHALL ET AL.

Decided April 23, 1904.

**1.—Public Lands—Homestead Donation—Proof of Occupancy—Cancellation of Patent.**

A homestead donation survey of public land, of 112 acres, was made for M. on March 21, 1877, and was afterwards reduced by corrected surveys to 91 acres. His proof of three years occupancy was of a tract of 143 acres, surveyed for him November 2, 1875, and such proof in no way showed the land surveyed on March 21, 1877, to be the land on which M.'s settlement was made, but patent was issued to M.'s heirs for the land as described in the proof of occupancy. After M. had left the land and his improvements thereon had rotted down, C. applied for a homestead donation survey which included the land, and after due proof of three years occupancy it was patented to him. Held, in a contest of title between C. and the heirs of M., that C. was entitled to judgment for the land, and to have the adverse prior patent canceled, since proper proof of occupancy was a condition precedent to the acquisition of title by M. and the issuance of patent therefor.

**2.—Same—Presumption Arising from Patent Overcome.**

While the patent issued to the heirs of M. furnished evidence that all steps required by law to authorize its issuance had been taken, such presumption arising therefrom could be rebutted and overcome by positive proof that such steps had not been taken.

Appeal from the District Court of Hopkins. Tried below before Hon. H. C. Connor.

*Frank E. Scott* and *R. B. Keasler,* for appellants.

*Crosby & Dinsmore,* for appellees.

TALBOT, ASSOCIATE JUSTICE.—This is an action of trespass to try title to about 91¼ acres of land situated in Hopkins County, Texas. Appellants claim the land as the heirs of Spicer McClallahan, deceased, and brought this suit to recover the same and to cancel a patent issued to appellee J. E. R. Campbell therefor on the 9th day of October, 1900. Appellants claim that their ancestor, Spicer McClallahan, settled on and pre-empted the land as a homestead in 1875, and that a patent issued to them therefor in July, 1901. Appellees Willis, Lindley, and Campbell disclaimed as to title and possession, and in so far as appellants sought to recover rents against them pleaded a general denial and the statute of limitation of two years.

Appellee J. W. Marshall pleaded not guilty, the statute of limitation of two and three years, improvements in good faith, and sought a cancellation of a patent issued to Spicer McClallahan or his heirs for the land in controversy on the 24th day of July, 1901. A trial was had before the court without the intervention of a jury and judgment rendered for appellee Marshall for the land and for a cancellation of the McClallahan patent. Judgment was rendered for appellants for the land as against the appellees Willis, Lindley and Campbell on their disclaimers, and in favor of said last named appellees upon the issue of rents, and for costs. Motion for new trial having been overruled, appellants appealed.

*Conclusions of Fact.*—On the 1st day of November, 1875, Spicer McClallahan settled on the land in controversy as vacant public domain, and on April 25, 1876, made application to the district surveyor of the Hopkins County district, under oath, to have the same surveyed for him as the head of a family, for homestead purposes. On March 21, 1877, H. C. Barker, then surveyor of Hopkins County, made a survey of land for Spicer McClallahan under his application for homestead donation. This survey contained 112½ acres, and included about twenty acres of the land now in controversy, and the field notes and application for such survey were duly recorded in the surveyor's records in Hopkins County. Spicer McClallahan built a cabin, dug a well, cleared and fenced a few acres of land, set out some fruit trees, and made it his home. These improvements were not on the 112½ acres of land surveyed by H. C. Barker, but they were in fact about a half mile south of the south line of such survey. The field notes of the Barker survey were filed with the Commissioner of the General Land Office June 24, 1877, and found to be in conflict with patented surveys of R. N. Booth and Jos. Zennuga. On November 9, 1879, and June 27, 1882, respectively, Spicer McClallahan had corrected surveys made by J. L. Gilbert, surveyor of Hopkins County, both of which covered the land in controversy, and included within their boundaries the improvements made by McClallahan in 1875. These corrected surveys made by Gilbert reduced the number of acres of the land to 91¼, and is the land described in appellants' petition. Said corrected surveys were sworn to by Gilbert and recorded in a book kept for that purpose in his office in Hopkins County, Texas, and were filed with the Commissioner of the General Land Office on July 1, 1882.

The only proof of occupancy and improvements made, so far as shown by the record before us, is that Spicer McClallahan in the name of Spicer McCleahan—the latter being an incorrect spelling of his name—was a bona fide settler upon 143 acres of vacant public land situated in Hopkins County, Texas, and surveyed for him on the 2d day of November, 1875, by H. C. Barker, a surveyor of said county, and that he had improved and occupied the same as a homestead for a period of three consecutive years, beginning on the first day of November, 1875. This proof was made by the affidavit of Spicer McCleahan and John and Elisha Clapp, sworn to by them before J. M. Ashcroft, clerk of the District Court of Hopkins County, on the 23d day of November, 1878; and the said Ashcroft, as such clerk, certifies "that John Clapp and Elisha Clapp are credible and trustworthy citizens" of Hopkins County. The survey for Spicer McClallahan under which appellants claim, made by H. C. Barker, was a tract of 112½ acres, surveyed March 21, 1877. The proof of occupancy and improvements in no way identifies or shows the land surveyed on March 21, 1877, to be the land on which the settlement of McClallahan was made. The proof of McClallahan as stated, and no other, was recorded in the surveyor's office of Hopkins County, Texas, and was the only proof.

of his occupancy filed with the Commissioner of the General Land Office. Such proof was filed in the General Land Office December 2, 1878, and on the same day a fee of $5 was received by the Commissioner in a letter written by E. Lindley to pay for issuance of patent to McClallahan. Spicer McClallahan lived on the land in controversy, and at the place where his improvements were made, continuously from the time he settled on same in 1875 until his death in 1885. At the time he settled on the land and during his occupancy thereof he had a wife and children living in Fannin County, Texas. Neither his wife nor children ever lived with him on the land. There is no evidence that he and his wife were divorced, but he left her some time between the years 1867 and 1870, and went into Wood County, Texas, and afterwards into Hopkins County, Texas. While living on the land in controversy, Spicer McClallahan visited his family in Fannin County several times and gave them some money. His wife died after he died, and the appellants in this suit are their only surviving heirs. In the documents and records pertaining to Spicer McClallahan's settlement and occupancy of land in Hopkins County mentioned, his name is spelled in different ways, but the evidence sufficiently identifies him as appellants' ancestor, and the person named in and connected with said surveys, etc. After McClallahan died no one lived on the land for more than ten years, and the improvements put thereon by him rotted down and disappeared. Appellants never rendered the land in controversy for taxes, nor paid taxes thereon. A patent was issued to Spicer McClallahan, granting him or his heirs the land in controversy, on the 24th day of July, 1901.

In April, 1895, J. E. R. Campbell was the head of the family, and at that time he made application for pre-emption as a head of a family, and caused a survey of the land in controversy to be made for him under his homestead donation claim, by J. L. Gilbert, county surveyor of Hopkins County, on the 1st day of April, 1895. This survey covered the land in controversy, and at that time the improvements put on the land by Spicer McClallahan had rotted down. These field notes and application were sent to the General Land Office. In the fall of 1895, after said survey, J. E. R. Campbell moved his family onto the land in controversy, erected a dwelling-house and outhouses, put a part in cultivation, occupied it and cultivated it as his home. The field notes of the Campbell survey were sent back for correction to be made by J. L. Gilbert, county surveyor of Hopkins County, on March 1, 1896. The field notes were again returned, and J. E. R. Campbell caused a resurvey and correction thereof to be made by Joseph Brashear, county surveyor of Hopkins County, on the 8th day of October, 1899. On October 9, 1900, a patent was issued for the land in controversy from the General Land Office, upon the field notes and survey of Joseph Brashear, above referred to, to J. E. R. Campbell.

J. E. R. Campbell and wife, by their general warranty deeds dated December 13, 1900, conveyed the land in controversy to the defendant,

J. W. Marshall. J. W. Marshall went into possession through tenants, immediately upon receiving the conveyance to him from Campbell, paid for the land, and he and Campbell, through whom he claims, have been continuously in possession thereof since the fall of 1895. J. W. Marshall put some improvements on the land after he went into possession. J. E. R. Campbell knew at the time he filed on the land that Spicer McClallahan had lived on the south end of it and had tried to get a patent for it.

*Conclusions of Law.*—We are of opinion that the judgment of the court below should be affirmed. It will be seen from our conclusions of fact that an effort was made by Spicer McClallahan, through whom appellants claim, to settle on vacant public domain in Hopkins County by virtue of the homestead donation laws then in force. That he failed to comply with such laws and acquired no right to the land in controversy, seems clearly apparent from the record before us. If it be conceded that Spicer McClallahan came within that class of persons to whom homestead donations were extended, and that he settled on the land in controversy in good faith and made improvements thereon as contemplated by law, still the evidence shows a failure on his part to comply with one of the conditions precedent to the acquisition of a vested right in the land sought to be recovered. The several enactments of our Legislature prescribing the terms and conditions upon which an actual settler may acquire a homestead upon vacant public land make it an essential prerequisite to the issuance of a patent therefor that such settler shall have improved the land and occupied it for three years in good faith, and that such proof of such improvement and occupancy in good faith shall have been made by the sworn affidavit of such settler and of two disinterested and credible citizens of the county in which the land is situated. These affidavits and the credibility of said citizens must be certified to by the clerk of the district court and filed in the General Land Office. The proof of improvements and occupancy on the part of Spicer McClallahan, made by appellants, is insufficient to show a compliance with the provisions of the law in respect to the land in controversy, but, on the contrary, unquestionably establishes that the law was not complied with. The quantity of land settled on by Spicer McClallahan, as shown by his proof of occupancy, was 143 acres, and was surveyed for him on the 2d day of November, 1875. The survey under which his heirs claim in this suit was made March 21, 1877, and contained only 112½ acres, and reduced by corrected surveys to 91¼ acres. There is nothing in the proof of occupancy to show that the tract of 112½ acres is a part of the 143 acres, and it is in nowise shown by such proof to be the land settled on and occupied by Spicer McClallahan.

In securing a homestead under the donation laws the settler was required, as a preliminary step, to make an application under oath to have his land surveyed, and he was required to state in such applica-

tion that he believed he had settled on vacant land. In passing upon this provision of the law in the case of Bledsoe v. Cains, 10 Texas, 460, under the Act of January 27, 1845, it was held, "that the affidavit was a necessary predicate of the survey is clear, and if the fact of such affidavit not having been made was established, it would destroy the validity of the survey." This view of the law was approved in the case of Miller v. Moss, 65 Texas, 181. By analogy and with as strong reason we think it may be said that the affidavits of Spicer McClallahan's occupancy and improvements of the land in controversy for three years from the date of his settlement thereon, was a condition precedent to the acquiring of title to and issuance of a patent for the land sued for; and the fact that such affidavits were not made and filed in the General Land Office defeats whatever right appellants might otherwise have had to recover, and authorized the cancellation of the patent issued to them on the 24th day of July, 1901.

It is true that the patent issued to Spicer McClallahan's heirs furnished presumptive evidence that all steps required by law to authorize its issuance had been taken, but such presumption arising therefrom was rebutted and overcome in this case by the positive proof made by appellants themselves that such steps had not been taken.

If the views expressed are correct, appellants can in no event recover, and whatever error is shown by their assignments becomes immaterial and need not be discussed. The judgment of the court below is affirmed.

*Affirmed.*